TEXTO COMPLETO DE LA RESOLUCION
Antecedentes
El 15 de enero de 1990 Teresa Pavón Romero completó y entregó a Connecticut Life Insurance Company, la cual posteriormente se fusionó con Massachusetts Mutual Life Insurance Company (en adelante Mass. Mutual), una solicitud para póliza de seguro por incapacidad. La cubierta de la póliza solicitada alcanza a $1,500 mensuales, pagaderos de por vida. Conjuntamente con la entrega de la solicitud cumplimentada la Sra. Pavón pagó el importe de la primera prima, ascendente a la cantidad *1007 de $60.14 y Mass. Mutual le entregó un recibo condicional de prima adelantada ("conditional advance premium receipt"), y también le expidió un resguardo provisional, otorgando cubierta temporera para el intervalo entre la aceptación de la solicitud y la decisión de Mass. Mutual respecto a la expedición de la póliza. El resguardo provisional limitaba el pago de los beneficios hasta un término máximo de cinco años o aquel fijado en la solicitud, cualesquiera menor, en caso de que durante su vigencia temporera ocurra el evento asegurado. En este caso el término máximo de cubierta es de cinco años.
El 24 de enero de 1990, a los nueve días de expedido el resguardo provisional y estando todavía la aseguradora en el proceso de evaluación de la solicitante, para decidir respecto a la expedición de la póliza de seguro, la Sra. Pavón alegó que sufrió un accidente y quedó incapacitada, por lo que solicitó a Mass. Mutual el pago de beneficios por incapacidad.
A partir del 17 de junio de 1991 Mass. Mutual comenzó a realizar los pagos de $1,500 mensuales conforme al resguardo provisional, los que detuvo en abril de 1995 al concluir los cinco años dispuestos en resguardo provisional. El 3 de agosto de 1994 Mass. Mutual había notificado a la Sra. Pavón que una vez venciera el período de cinco años cubierto por el resguardo provisional, cesarían los pagos mensuales debido a que la Sra. Pavón no era considerada como un riesgo común ("standard risk") al momento de llenar la solicitud de seguro, razón por la cual la aseguradora optó por no expedir la póliza de seguro por incapacidad de por vida.
La Sra. Pavón acudió al Comisionado de Seguros y presentó solicitud de investigación al respecto. Como resultado de ello el Investigador Especial, Sr. Ramón L. Cruz Colón, determinó que no existía evidencia suficiente para considerar que la Sra. Pavón no era un riesgo común, que era irrazonable el tiempo que demoró Mass. Mutual en informarle en cuanto a la denegatoria de la póliza por lo que debía considerarse como expedida y entregada la póliza de la clase y en la cuantía solicitada por la Sra. Pavón a Mass. Mutual, de conformidad a lo dispuesto en el Artículo 11.230 del Código de Seguros de Puerto Rico, 26 L.P.R.A. § 1123 (1).
Notificada Mass. Mutual de tales determinaciones, solicitó al Comisionado que tal dictamen se dejara sin efecto, señalando que se trataba de una controversia de naturaleza contractual privada entre la Sra. Pavón y Mass. Mutual, sobre la cual el Comisionado de Seguros no tenía jurisdicción.
El 3 de julio de 1998 el Comisionado de Seguros emitió orden acogiendo y confirmando las determinaciones del Investigador Especial e impuso a Mass. Mutual una multa de $1,000.00 por entender que violó el Artículo 11.230 (1) del Código de Seguros, supra. También le ordenó actuar de conformidad a lo resuelto en cuanto a la existencia del contrato de seguro entre la Sra. Pavón y Mass. Mutual.
La Aseguradora solicitó reconsideración y desestimación del caso administrativo, reiterando su planteamiento de que el Comisionado no cuenta con jurisdicción sobre la controversia entre las partes. Solicitó además que se diera por sometido el asunto y se obviara la vista administrativa evidenciaría, por entender que se trata de un asunto de derecho exclusivamente. El 17 de agosto de 1998 la Oficial Examinadora del Comisionado de Seguros emitió resolución interlocutoria declarando sin lugar la moción de reconsideración y desestimación.
Con el objetivo de solicitar revisión judicial cuanto antes, Mass. Mutual solicitó del Comisionado que se dictara orden final sobre el asunto jurisdiccional planteado. La Oficial Examinadora se limitó a emitir resolución interlocutoria el 15 de septiembre de 1998, declarando sin lugar la solicitud de Mass. Mutual y señalando vista evidenciaría sobre los méritos de la controversia para el 3 de noviembre de 1998, la cual posteriormente fue reseñalada a petición de Mass. Mutual para el 9 de diciembre de 1998.
Inconforme, Mass. Mutual recurre ante nos mediante el recurso de mandamus del epígrafe en jurisdicción original. Aduce que el Comisionado de Seguros actuó ultra vires cuando determinó que en función del Art. 11.230(1) del Código de Seguros, supra, venía obligada a extender a la Sra. Pavón la póliza de seguros por ella interesada con cubierta más allá del período de 5 años comprendido como resguardo provisional. Añade que al así disponer el Comisionado usurpó facultades únicamente delegadas al sistema judicial. Entendemos que no le asiste la razón al recurrente.
*1008 Exposición y Análisis
Es parte del deber ministerial del Comisionado de Seguros hacer cumplir las disposiciones del Código de Seguros de Puerto Rico, conforme la política pública en Puerto Rico. Véase Artículo 2.030 del Código de Seguros de Puerto Rico, 26 L.P.R.A. § 203. Parte indispensable de dicha labor le requiere atender y resolver querellas de consumidores de pólizas de seguros cuando se impute la comisión de malas prácticas. Véase Artículos 2.140-2.270, 26 L.P.R.A. § 214-227. Para ello es insoslayable que el Comisionado atienda las querellas, reciba prueba, pase juicio y resuelva los asuntos específicos y particulares que nutren toda controversia que sea traída a su atención.
Al así actuar, el ejercicio de la facultad del Comisionado queda restringido y delimitado a su función y autoridad bajo ley. Es decir, si el Comisionado de Seguros determina que una aseguradora en particular ha violado alguna de las disposiciones del Código de Seguros, cuenta con la facultad de así declararlo dentro del adecuado trámite administrativo. Siempre habrá de cumplir con el debido proceso de ley, ordenamiento sustantivo y procesal específico. De entenderlo así, el Comisionado también puede instar a la parte a no continuar cometiendo violación a la ley o reglamento, imponerle multa o cualquiera otra sanción autorizada y apropiada.
En el presente caso el Comisionado de Seguros se encuentra en el proceso de atender una querella presentada por un consumidor de seguros en Puerto Rico y actúa dentro de su facultad en ley para investigar los hechos y disponer remedio. Para dilucidar si en efecto Mass. Mutual ha violado alguna de las disposiciones el Código de Seguros necesariamente tiene que examinar el contrato entre las partes y tomar partido en cuanto a la controversia. De coincidir con Mass. Mutual procederá a desestimar la querella; de lo contrario, tomará alguna providencia dentro de las autorizadas en ley.
El trámite administrativo está todavía inconcluso, y es de rigor señalar que de autos no hay ahora indicios de que la función del Comisionado de Seguros excede de su capacidad en ley, conforme a su autoridad reguladora y fiscalizadora. Nada ahora señala que el Comisionado usurpa la disposición constitucional o estatutaria reservada en nuestro sistema al foro judicial.
El que previo a su determinación reguladora fuera menester determinar que el Comisionado se pronunciare en cuanto a la cubierta de seguros, no puede significar que el asunto contractual relacionado a la expedición de la póliza y cobro futuro de su cubierta constituya cosa juzgada en el plano de naturaleza civil entre la Sra. Pavón y Mass. Mutual.
Como se sabe y hemos ya señalado, debido a que la facultad del Comisionado no usurpa las prerrogativas del poder judicial, tampoco su dictamen final podrá contar con carácter de crédito ejecutivo, capaz de ser convertido en compensación monetaria de clase alguna a favor de la Sra. Pavón, contra la voluntad de Mass. Mutual. Si Mass. Mutual no acata un dictamen final administrativo del Comisionado dentro de su reconocida capacidad reguladora, tiene la opción de recurrir al foro judicial, mediante revisión, ante este foro apelativo. Art. 4.002(g), Ley de la Judicatura de Puerto Rico, según enmendada por la Ley Núm. 248 de 25 de diciembre de 1995; Regla 56 del Reglamento del T.C.A., 4 L.P.R.A. Ap. XXII (A); Sección 4.1 de la Ley Núm. 170 de 12 de agosto de 1988, L.P.A.U., 3 L.P.R.A. En caso de que el resultado final administrativo sea adverso al planteamiento de la Sra. Pavón, de igual forma queda a su disposición atacarlo según ya señalado.
Por otro lado, tanto Mass. Mutual y la Sra. Pavón siempre han tenido y tienen a su disposición el foro judicial, mediante trámite ordinario, para reclamar lo que entienda es su derecho económico bajo el contrato de seguros, en acción de nadóle contractual; bien al amparo de la sentencia declaratoria que incorpora la Regla 59 de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. DI, R. 59 ó el trámite de cobro de póliza, etc..
En conclusión, no consta de autos que el Comisionado de Seguros ha actuado de forma ultra vires que a su vez requiera de nuestra intervención bajo el recurso extraordinario del mandamus, aun considerándolo en su vertiente de no actuar, inacción, o de no poner en vigor un trámite administrativo alegadamente no autorizado. Por ello, no debemos expedir el auto solicitado de carácter extraordinario y discrecional, cuyo "factor de mayor importancia y peso es el del posible impacto al interés público ", Noriega Rodríguez v. Hernández Colón, 135 D.P.R. _ (1994), 94 *1009 J.T.S. 35, lo que es aquí inexistente. El mandamus, como todo recurso extraordinario, sólo procede cuando no exista al alcance del actor un trámite ordinario adecuado y eficaz, frente a situaciones de daños inminentes, Charana v. Pueblo, 109 D.P.R. 641, 647 (1980).
Postreramente valga consignar que tratándose de un trámite bajo nuestra jurisdicción original, la falta de emplazamiento del demandado nos priva de jurisdicción sobre el Comisionado por lo que también nada de lo aquí señalado puede entenderse como dictamen judicial más allá de la decisión de no expedir el recurso de Mandamus. Al igual que sucede cuando se deniega expedir un certiorari, compárese Núñez Borges v. Pauneto Rivera, 130 D.P.R. 825 (1981), la denegatoria en cuanto a la expedición del auto de Mandamus en nada prejuzga en los méritos del asunto o cuestión planteada, pudiendo ello ser reproducido nuevamente mediante el correspondiente recurso de revisión judicial o litigio ordinario que corresponda.
Atendido el resultado, no es preciso aquí determinar respecto a si la petición debió ser juramentada. En la Regla 55 de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III R. 55, específicamente se dispuso que la petición de mandamus deberá ser jurada. En la enmienda de dicha regla a virtud de las disposiciones del Art. 30 de la Ley Núm. 249 de 25 de diciembre de 1995, según ésta aparece a la pág. 100 del suplemento acumulativo de 1998 del título 32 de L.P.R.A., no surge dicho requisito de juramentación. No obstante, en el texto de la ley, según reportada en las Leyes de Puerto Rico, da la impresión de que el primer párrafo de dicha regla (donde aparece el requisito de juramentación) no fue alterado y solamente se varió el segundo en el que se adicionó al Tribunal de Circuito de Apelaciones, entre otros cambios.
Dictamen
Se deniega la solicitud del epígrafe, por lo que no se expide el auto de Mandamus.
Notifíquese vía fax, teléfono y correo ordinario a la brevedad posible.
Lo acordó el Tribunal y lo certifica la Señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General